MARK BRNOVICH
ATTORNEY GENERAL
(FIRM STATE BAR NO. 14000)

JEFFREY L. SPARKS (STATE BAR NO. 027536)
GINGER JARVIS (STATE BAR NO. 014887)
JASON EASTERDAY (STATE BAR NO. 023191)
ASSISTANT ATTORNEYS GENERAL

CAPITAL LITIGATION SECTION
2005 N. CENTRAL AVENUE
PHOENIX, ARIZONA  85004
TELEPHONE: (602) 542-4686
CLDocket@azag.gov
ATTORNEYS FOR DEFENDANTS

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Clarence Wayne Dixon,<br>                              Plaintiff,<br><br>          -v-<br><br>Arizona Department of Corrections, Rehabilitation & Reentry, et al.,<br>                              Defendants. | CV 22–00743–PHX–DJH (JFM)<br><br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION OR TEMPORARY RESTRAINING ORDER**<br><br>**HEARING SET FOR 5/9/2022 AT 11:00 A.M.** |

Plaintiff Clarence Dixon is scheduled to be executed on May 11, 2022 for his conviction of the 1978 first degree murder of 21-year-old Arizona State University student Deana Bowdoin.  *See State v. Dixon*, 250 P.3d 1174 (Ariz. 2011).   He seeks to enjoin the State from carrying out his lawfully-imposed sentence solely on the basis that, as part of testing performed to establish a beyond use date for the compounded pentobarbital to be used in his execution, a pH test resulted in a value of 10.6, rather than 9.0–10.5.   But Dixon has failed to demonstrate a substantial likelihood of success on the merits of his Eighth and Fourteenth Amendment claims based on this fact, and the other relevant factors also weigh against a stay.   This Court should therefore deny Dixon's request for temporary restraining order or preliminary injunction.

## PROCEDURAL BACKGROUND

Plaintiff is scheduled to be executed on May 11, 2022, for his conviction of the 1978 first degree murder of 21-year-old Arizona State University student Deana Bowdoin. *See State v. Dixon*, 250 P.3d 1174 (Ariz. 2011). Scant days before his execution, Dixon filed a Complaint asserting a First Amendment and Due Process right to information regarding the beyond use date ("BUD") of the compounded pentobarbital Defendants intend to use in his execution. Dkt. # 1. He also asked this Court to enjoin Defendants from executing him until they provided the requested information. Dkt. # 5. On May 6, 2022, this Court ordered Defendants to file a notice stating the BUD for the compounded pentobarbital to be used in Dixon's execution. Dkt. # 12. Defendants did so, filing a Notice stating that the BUD of the compounded pentobarbital to be used in Dixon's execution was August 25, 2022. Dkt. # 14. Defendants also provided a declaration from the pharmacist who compounded the pentobarbital stating that the BUD was August 25, 2022, based on stability testing of a preparation of pentobarbital from the same original powder as the preparation to be used in Dixon's execution. *See* Dkt. # 14, Exhibit 1.

This Court held a hearing on May 7, 2022, at which it granted Defendants' motion to dismiss the complaint as moot because "Plaintiff has been provided the information he requested" and, additionally, because his First Amendment claim was foreclosed by *First Amendment Coalition of Arizona v. Ryan*, 938 F.3d 1069, 1080 (9th Cir. 2019). Dkt. # 16. At the hearing Dixon indicated he would likely amend his complaint to raise additional claims related to use of the compounded pentobarbital with the BUD of August 25, 2022. *Id.*

On May 8, 2022, Dixon filed an Amended Complaint asserting a violation of the Eighth and Fourteenth Amendments premised on the unsupported conclusion that the compounded pentobarbital to be used in his execution will be expired. Dkt. # 21-1. He also asked for a preliminary injunction or temporary restraining order

1   enjoining Defendants from executing him with an expired drug.  Dkt. # 23.  The
2   entire premise of Dixon's claims and request for emergency injunctive relief is
3   wholly unsupported.  The beyond use date of the drug to be used in his execution is
4   August 25, 2022.  His request for injunctive relief should be denied.

5                  **LEGAL STANDARD FOR INJUNCTIVE RELIEF**

6          Finally, a plaintiff seeking a preliminary injunction or TRO must establish
7   that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable
8   harm without an injunction, (3) the balance of equities tips in his favor, and (4) an
9   injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.
10  7, 20 (2008).  "Speculative injury does not constitute irreparable injury."  *Goldie's*
11  *Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir.
12  1984) (citation omitted).   And a preliminary injunction is "'an extraordinary
13  remedy that may only be awarded upon a clear showing that the plaintiff is entitled
14  to such relief.'"  *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1312 (9th
15  Cir. 2015).   These principles apply "even in the context of an impending
16  execution."  *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012); *see also Hill v.*
17  *McDonough,* 547 U.S. 573, 583–84 (2006) ("Filing an action that can proceed
18  under § 1983 does not entitle the complainant to an order staying an execution as a
19  matter of course.").

20         Finally, if this Court grants injunctive relief, Defendants request that this
21  Court grant Plaintiff a preliminary injunction rather than a temporary restraining
22  order.   Unlike an order granting a preliminary injunction, an order granting a
23  temporary restraining order ordinarily is not an appealable order.  *SEIU v. Nat'l*
24  *Union of Healthcare Workers,* 598 F.3d 1060, 1067 (9th Cir. 2010).  Since Dixon's
25  execution is scheduled for May 11, a temporary restraining order would serve to
26  vacate the Arizona Supreme Court's warrant of execution without providing an
27  appealable order to the State.  A preliminary injunction, in contrast, would preserve
28  Defendants' ability to seek appellate review of any grant of injunctive relief.

1   **THIS COURT SHOULD DENY INJUNCTIVE RELIEF**

2          Dixon's request for a preliminary injunction or TRO should be denied

3   because he cannot demonstrate that the *Winter* factors favor granting him

4   preliminary relief.

5   **I.      *Dixon cannot show a reasonable likelihood of success on the merits.***

6          First, Dixon has failed to show a reasonable likelihood of success on the

7   merits of his Eighth or Fourteenth Amendment claims.

8                  **A. Dixon's Eighth Amendment claim fails.**

9          To succeed on an Eighth Amendment method-of-execution claim, a prisoner

10  must establish that the method presents a risk that is "sure or very likely to cause

11  serious illness and needless suffering and give rise to sufficiently imminent

12  dangers." *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (quoting *Baze v. Rees*, 553

13  U.S. 35, 50 (2008)) (cleaned up).  And for the prisoner to prevail, "there must be a

14  substantial risk of serious harm, an objectively intolerable risk of harm that

15  prevents prison officials from pleading that they were subjectively blameless for

16  purposes of the Eighth Amendment." *Id.* (quoting *Baze*, 553 U.S. at 50) (cleaned

17  up).  Moreover, a prisoner cannot succeed on a method-of-execution challenge

18  "merely by showing a slightly or marginally safer alternative." *Id.* (quoting 553

19  U.S. at 51).  A prisoner has the burden of identifying an "alternative that is

20  feasible, readily implemented, and in fact significantly reduces a substantial risk of

21  severe pain." *Id.* (quoting 553 U.S. at 52) (cleaned up).  This is likewise true for

22  an as-applied method-of-execution challenge. *See Bucklew v. Precythe*, 587 U.S.

23  ___, ___, 139 S. Ct. 1112, 1126 (2019) ("identifying an available alternative is a

24  requirement of *all* Eighth Amendment method-of-execution claims alleging cruel

25  pain) (cleaned up, emphasis in original).  As the Supreme Court has recently

26  reiterated, pentobarbital, which will be used in Dixon's execution is "widely

27  conceded to be able to render a person fully insensate and does not carry the risks

28  of pain that some have associated with other lethal injection protocols." *Barr v.*

4

1    *Lee*, 140 S. Ct. 2590, 2591 (2020) (cleaned up).

2        Finally, the Supreme Court has cautioned that "challenges to lethal injection

3 protocols test the boundaries of the authority and competency of federal courts"

4 and thus the federal courts "should not embroil themselves in ongoing scientific

5 controversies beyond their expertise." *Glossip*, 576 U.S. at 882 (quoting *Baze*, 553

6 U.S. at 51) (cleaned up).     Thus, in his challenge to ADCRR's protocol, Dixon

7 bears the burden to show, based on evidence presented, that there is a "substantial

8 risk of severe pain" in the pentobarbital execution procedure scheduled for later

9 this week. *Id.*

10        Dixon has presented no evidence to justify a stay of execution and has not

11 shown a reasonable likelihood that he can meet his burden under *Glossip* to show

12 that the pentobarbital to be used on May 11 is "sure or very likely to cause serious

13 illness and needless suffering and give rise to sufficiently imminent dangers."

14 Dixon's Eighth Amendment Claim is premised on the unsupported conclusion that

15 the compounded pentobarbital is expired. Dkt. # 23, at 6, 11–12. Dixon argues that

16 because the Summary Report indicates that the pH of the tested pentobarbital was

17 10.6, which is 0.1 beyond the stated range of 9.0 to 10.5, the drug "failed this test"

18 and therefore the BUD of the compounded pentobarbital to be used in his

19 execution cannot extend past 45 days. Dkt. # 6. As a result, he contends, by using

20 the compounded pentobarbital prepared on February 26, 2022, in his execution,

21 Defendants will violate the execution protocol's requirement that they "will only

22 use chemicals in an execution that have an expiration or beyond-use date that is

23 after the date that the execution is carried out." Dkt. # 9–1, Exhibit 1, at

24 Attachment D, ¶ A.1.I. But, importantly, Dixon has presented no evidence that a

25 particular pH test result of .1 beyond the stated range precludes the pharmacist

26 from extending the BUD, as the pharmacist did.

27        In support of his argument that the 10.6 pH result means that compounded

28 pentobarbital's BUD cannot be extended, Dixon points to his expert's statement

1   that, in addition to potency, "[t]here are other parameters such as pH … that need
2   to be also included … in order to offer a complete and accurate picture of the drug
3   quality and provide assurance that the medication will perform as expected."  Dkt.
4   # 21-3, ¶ 24.   And although Dixon's expert states in a different report that
5   pentobarbital "should" be tested for "pH: 9.0-10.5," Dkt. # 21-2, ¶ 31, Dixon has
6   presented no evidence stating that a pH result of 10.6 automatically precludes
7   extension of the BUD beyond 45 days.   Moreover, the United States
8   Pharmacopeia, 22 General Chapter <797> Pharmaceutical Compounding-Sterile
9   Preparations," does not state that a pH test is required to extend a BUD beyond 45
10  days.  *See* USP 23 <797> at "STORAGE AND BEYOND-USE DATING."  Dixon
11  therefore cannot establish a reasonable likelihood of success on the merits of his
12  Eighth Amendment claim because he has failed to demonstrate that the
13  pentobarbital is expired.

14        Even if Dixon could show that the pentobarbital will be "expired" due to the
15  pH test result, he still has no plausible Eighth Amendment claim.  To obtain a stay,
16  Dixon must show a substantial likelihood that he can establish that the
17  compounded pentobarbital to be used in his execution creates a substantial risk of
18  severe pain. *Glossip*, 576 U.S. at 877.  He has not done so.  Nothing Dixon has
19  presented establishes that the compounded pentobarbital is degraded, unstable, or
20  ineffective, much less that it will "cruelly superadd[] pain to the death sentence."
21  *Bucklew*, 139 S. Ct. at 1125.  As shown in the Stability Study Summary, the testing
22  results show that the pentobarbital solution is sterile and within the assay
23  parameters.  See Dkt. # 14–1, Exhibit 1, Attachment 3.  As for pH, Dixon has not
24  presented any evidence that the additional 0.1 value will cause any pain, much less
25  the "serious illness and needless suffering" required to establish an Eighth
26  Amendment claim.   And his reference to his age and declining health simply
27  speculates that the pentobarbital may take longer to work, *see* Dkt. # 23, at 11–12,
28  which does not approach the threshold for an Eighth Amendment claim to establish

a substantial risk of serious harm.  There is no Eighth Amendment claim here, and Dixon's request to stay his execution should be denied.

**B. Dixon does not have a due process liberty interest in ADCRR Department Order 710 ("DO 710") and even if he does, it will not be violated.**

Dixon claims that he has a due process liberty interest created by ADCRR DO 710's requirement that no drug will be used in an execution that is past its BUD.  Dkt. # 23, at 8–11.  Dixon does not possess such a liberty interest, and in the alternative, even if he does it will not be violated because the compounded pentobarbital to be used in his execution is not expired.

*1. DO 710 does not create a liberty interest under the 14th Amendment.*

The Fourteenth Amendment prohibits a State from depriving any person of "life, liberty, or property, without due process of law;…"  U.S. Const. amend. XIV, § 1.  "To create a liberty interest, a statute or regulation must contain 'explicitly mandatory language,' *i.e.,* specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Rodriguez v. McLoughlin*, 214 F.3d 328, 338 (2d Cir. 2000) (quoting *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 463 (1989)).  Moreover,

> It should be obvious that the mandatory language requirement is not an invitation to courts to search regulations for *any* imperative that might be found.  The search is for *relevant* mandatory language that expressly requires the decisionmaker to apply certain substantive predicates in determining whether [the plaintiff] may be deprived of the particular interest in question.

*Thompson*, 490 U.S. at 464 n.4 (emphasis in original).  Also, just because ADCRR "has established procedures to be followed does not mean that it has created a protectable liberty interest." *Rodriguez*, 214 F.3d at 339.  "A liberty interest is of course a substantive interest of an individual; it cannot be the right to demand needless formality." *Olim v. Wakinekona*, 461 U.S. 238, 280 (1983) (alteration omitted) (citing *Shango v. Jurich*, 681 F.2d 1091, 1100–01 (7th Cir. 1982)). "Process is not an end in itself.  Its constitutional purpose is to protect a substantive

7

1   interest to which the individual has a legitimate claim of entitlement." *Id.*

2       "Where a particular amendment 'provides an explicit textual source of
3   constitutional protection' against a particular sort of government behavior, 'that
4   Amendment, not the more generalized notion of "substantive due process," must
5   be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273
6   (1994) (Rehnquist, C.J., for plurality) (quoting *Graham v. Connor*, 490 U.S. 386,
7   395 (1989)). In other words, "if a constitutional claim is covered by a specific
8   constitutional provision, such as the Fourth or *Eighth Amendment*, the claim must
9   be analyzed under the standard appropriate to that specific provision, not under the
10  rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n. 7
11  (1997) (emphasis added); *see also Hall v. City of Los Angeles*, 697 F.3d 1059,
12  1068 (9th Cir.2012) ("Where a particular Amendment provides an explicit textual
13  source of constitutional protection against a particular sort of government behavior,
14  that Amendment, not the more generalized notion of substantive due process, must
15  be the guide for analyzing such a claim.").

16      Further, "[a] violation of state law does not by itself constitute a violation of
17  the Federal Constitution." *Nordlinger v. Hahn*, 505 U.S. 1, 26 (1992). In *Pavatt v.
18  Jones*, 627 F.3d 1336, 1341 (10th Cir. 2010), the court found that a death row
19  inmate failed to establish a substantial likelihood of prevailing on a due process
20  challenge to the state's execution protocol based on the inmate's assertion that the
21  protocol violated state law. In reaching that conclusion, the court noted that there
22  was no indication the state denied the inmate the opportunity to challenge the
23  protocol administratively or in state court. *Id.* Here, Dixon does not even contend
24  that ADCRR's protocol violates state law, only that the protocol (which is not law)
25  will be violated. If an alleged violation of state law did not create a protected
26  liberty interest under the due process clause, then surely an alleged violation of a
27  protocol that is not law cannot.

28      DO 710's requirement to use non-expired drugs does not create a protectable

1   liberty interest because it is merely a procedure to be followed.   Dixon's
2   substantive liberty interest is to be executed without violating the Eighth
3   Amendment's prohibition against "cruel and unusual punishment[]."   The use of
4   execution drugs within its BUD is merely a procedural safeguard.   Dixon, by
5   claiming to have a liberty interest in the drug's BUD, is demanding needless
6   formality which the Supreme Court has found inappropriate.   Instead, Dixon's
7   claim must be analyzed under the Eighth Amendment's specific rubric and not
8   under the generalized due process rubric.

9        For example, in *Sepulvado v. Jindal*.   729 F.3d 413 (5th Cir. 2013),
10  Louisiana sought to carry out an execution without disclosing its execution
11  protocol.  *Id*. at 415—16.  Louisiana, however, disclosed it would use a single dose
12  of pentobarbital.  *Id*.  Sepulvado joined an existing a 42 U.S. § 1983 suit alleging
13  that failure to disclose the details of the execution protocol violated his Due
14  Process rights under the Fourteenth Amendment.  *Id*.  "There is no violation of the
15  Due Process Clause from the uncertainty that Louisiana has imposed on Sepulvado
16  by withholding the details of its execution protocol."  *Id*. at 420.  Thus, if a state
17  may withhold its execution protocols in conformity with Due Process Clause, the
18  fact of disclosing the protocols to explain the procedures cannot create such a due
19  process right.

20       In the alternative, even if Dixon could establish a due process liberty interest
21  in assuring that his execution is carried out consistent with the execution protocol,
22  Department Order 710, and the Eighth Amendment, he has not alleged a plausible
23  violation of that interest.   First, Dixon points to no authority for the idea that he
24  possesses a procedural right to challenge the BUD provided by Defendants.
25  Defendants' execution procedures do not purport to create any such right, and
26  Dixon cites no constitutional provision, statute, or case law supporting such a right.
27  By comparison, if Defendants were using a manufactured drug for Dixon's
28  execution with a manufacturer's expiration date on the label, Dixon would not be

1 entitled to obtain information documenting how the manufacturer arrived at a
2 particular expiration date in order to dispute its accuracy.  The same is true here.
3 Although Defendants' execution protocol makes clear they will not use any drug
4 that is past its BUD, it purports to create no procedural right to challenge an
5 expiration date or BUD assigned to the drug that will be used in an execution.

6 Second, as explained above, Dixon has failed to establish that the August 25,
7 2022, BUD certified by ADCRR's pharmacist is invalid based on the pH test
8 result.  The fact that Defendants' pharmacist apparently requested more testing
9 than is necessary to determine the BUD does not then turn that additional testing
10 into a requirement.  The test results show that there no risks of "sub-potency" or
11 "degradation," Dkt. # 23, at 11, because the Pentobarbital Sodium Assay test
12 results showed that the compounded pentobarbital fell within the 92.0–108.0%
13 requirements up to 180 days from initial testing.  Dkt. # 14–1, Exhibit 1,
14 Attachment 3 (Stability Study Summary Report).

15 The fact remains that, based on the Stability Study Summary Report, the
16 FDA-registered testing laboratory concluded that the compounded pentobarbital
17 "met client provided specifications through 180 days in ambient storage
18 conditions." *Id.*  And, based on those same results, the licensed pharmacist, who is
19 "aware of and follow[s] the guidelines and requirements found in the United States
20 Pharmacopeia," concluded that the BUD of the compounded pentobarbital
21 prepared on February 26, 2022 was August 25, 2022, 180 days from its
22 preparation. *Id.* at Exhibit 1, ¶¶ 2–3, 9.  If extending the BUD required that the pH
23 test results fell between 9.0 and 10.5, then neither the lab nor the pharmacist would
24 have reached the conclusions they did.

25 Dixon's attempt to invalidate the BUD stated in the pharmacist's declaration
26 thus fails.  As a result, even if Dixon could establish a due process liberty interest
27 in Defendants' not violating their execution protocol (which he cannot), Dixon
28 nevertheless cannot establish a reasonable likelihood of success on the merits of

10

1  his due process claim because he has failed to allege facts suggesting that any
2  violation will occur.

3      **II.**  ***Dixon will not suffer irreparable harm.***

4      Nor do Dixon's unsupported conclusions meet his burden to establish to
5  establish *Winter's* second factor, that he will suffer irreparable harm absent an
6  injunction.  To meet the "irreparable harm" requirement, Plaintiff must do more
7  than simply allege imminent harm; he must demonstrate it. *Caribbean Marine*
8  *Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).  Mere
9  "[s]peculative injury does not constitute irreparable injury sufficient to warrant
10  granting a preliminary injunction." *Id*. at 674-75.  The party seeking preliminary
11  relief may not rely on "unsupported and conclusory statements regarding harm [it]
12  might suffer" to justify its requested relief. *Herb Reed Enters., LLC v. Fla. Entm't*
13  *Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).

14      Defendants have established that the compounded pentobarbital to be used
15  in Dixon's execution has a BUD of August 25, 2022, well after his scheduled
16  execution date.  Thus, Defendants are in compliance with the requirement that they
17  not use a drug past its BUD, and Dixon will suffer no harm if his request for
18  preliminary injunction is denied.   "Absent a showing of irreparable harm,
19  Plaintiff's Motion for Preliminary Injunction fails as a matter of law." *Center for*
20  *Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011).

21      **III.**  ***The balance of equities and public interest do not favor an***
         ***injunction.***

22      Finally, Dixon also fails to establish that the third and fourth *Winter* factors,
23  balance of the equities and public interest, weigh in favor of a stay of execution.
24  The Supreme Court has recognized that a stay of execution "is not available as a
25  matter of right, and equity must be sensitive to the State's strong interest in
26  enforcing its criminal judgments without undue interference from the federal
27  courts." *Hill*, 547 U.S. at 584.  Regarding the equities, "[a] court considering a
28  stay must also apply 'a strong equitable presumption against the grant of a stay

1    where a claim could have been brought at such a time as to allow consideration of
2    the merits without requiring entry of a stay.'"   *Id.* (quoting *Nelson v. Campbell*,
3    541 U.S. 637, 650 (2004)).    Dixon waited to file his lawsuit regarding the
4    compounded pentobarbital's BUD until only days remained before his scheduled
5    execution, and amended his complaint to include the current claims a mere *3* days
6    before his execution.   Although he claims he diligently sought the requested BUD
7    information from ADCRR, he could have brought his claim at an earlier time in
8    order to allow consideration without necessitating a stay of his lawfully imposed
9    death sentence and scheduled execution.   *See Rhines v. Weber*, 544 U.S. 269, 277–
10   78 (2005) (Court recognizing that "capital [habeas] petitioners might deliberately
11   engage in dilatory tactics to prolong their incarceration and avoid execution of the
12   sentence of death").   This equitable consideration should weigh strongly against
13   granting his request for a stay.   *See Hill*, 547 U.S. at 584.

14       The Supreme Court has also long recognized a "State's *significant interest* in
15   enforcing its criminal judgments."   *Nelson*, 541 U.S. at 650 (emphasis added).
16   And both the State and the victims of crime have an important interest in timely
17   enforcement of a criminal sentence.   *Hill*, 547 U.S. at 584; *see also Nelson*, 541
18   U.S. at 644 ("a State retains a significant interest in meting out a sentence of death
19   in a timely fashion").   Similarly, "any time a State is enjoined by a court from
20   effectuating statutes enacted by representatives of its people, it suffers a form
21   of *irreparable injury*."   *Maryland v. King*, 567 U.S. 1301, 133 S. Ct. 1, 3, 183
22   L.Ed.2d 667 (2012) (Roberts, C.J., in chambers) (emphasis added) (alterations and
23   citation omitted).   Here, Dixon's conviction and death sentence are long final on
24   direct appeal, and he has exhausted his state post-conviction and federal habeas
25   corpus remedies.   Under those circumstances, A.R.S. § 13-759(A) provides for the
26   lawful carrying out of executions, stating that a warrant of execution shall be
27   issued with the execution occurring on the 35th day following the issuance of the
28   warrant.   Plaintiff's request for a TRO or preliminary injunction seeks to prevent

that from occurring—thereby enjoining Arizona law from being effectuated. Additionally, Arizona crime victims have a constitutional right to a prompt and final conclusion of the case. *See* Ariz. Const. art. II, § 2.1(10). Justice for Dixon's victims has been delayed far too long already.

"The federal courts can and should protect States from dilatory or speculative suits." *Hill*, 547 U.S. at 585. Dixon has failed to establish a likelihood of success on the merits. There is no risk irreparable harm because the drug used in his execution will be within its BUD. And given his last-minute filing and the State's considerable interest in timely carrying out lawful sentences, the balance of equities and public policy weigh against a stay of execution. Because Dixon fails to establish that the relevant factors weigh in favor of a stay, his request for a TRO or preliminary injunction should be denied. *Winter*, 555 U.S. at 20.

## IF THIS COURT ENTERS AN INJUNCTION, IT SHOULD ALLOW DEFENDANTS TO CARRY OUT DIXON'S EXECUTION WITH NEWLY COMPOUNDED PENTOBARBITAL THAT IS WITHIN A BUD THAT DOES NOT REQUIRE STABILITY TESTING

The basis for Dixon's request for injunctive relief is his argument that the pentobarbital prepared on February 26, 2022, to be used in his execution is expired. He contends that the stability study disclosed by Defendants "cannot be used to extend the BUD beyond 45 days, the outer limits set by pharmacy compounding standards." Dkt. # 23, at 2. Thus, he asserts, the pentobarbital prepared on February 26, 2022, is expired, and he asks this Court to enjoin Defendants from executing him using it. If this Court grants the injunctive relief Dixon requests, the constitutional violations he has pled would be remedied by executing him on May 11, 2022, with newly compounded pentobarbital that will not be past its BUD on the date of execution. Thus, an order granting an injunction should allow ADCRR to overcome the injunction and proceed with Dixon's execution using newly-compounded pentobarbital that is within a BUD that has not been extended by stability testing. Indeed, Dixon concedes that using "a drug that

13

will not be expired on the date of his execution" is a "known and available alternative" to using the pentobarbital compounded on February 26, 2022. Dkt. # 23, at 12.

ADCRR is prepared, in the event this Court grants an injunction, to have a new preparation of pentobarbital compounded on May 9, 2022, and stored under refrigeration, for use in the execution on May 11, 2022. As a result, any injunction entered by this Court should state that Defendants may proceed with Dixon's 10:00 a.m., May 11, 2022, execution if it uses pentobarbital that was prepared no less than 72 days prior to that date and time and kept refrigerated. ADCRR is also prepared to provide potency testing results of such newly compounded pentobarbital approximately 24 hours prior to the actual time of execution. Dixon's expert admits that according to USP Chapter 797, without any stability testing, a pentobarbital solution that is "kept refrigerated" has a BUD of 72 hours. Dkt. # 21–2, ¶ 10. Accordingly, pentobarbital prepared on May 9, 2022, and kept refrigerated, would have a BUD of the time of preparation on May 12, 2022, the day *after* Dixon's execution. Thus, any injunction against executing Dixon with the pentobarbital compounded on February 26, 2022, should allow ADCRR to execute Dixon with pentobarbital compounded on May 9, 2022, and kept under refrigeration. Dixon cannot object to this course of action because he himself suggests it as a viable alternative. In other words, if the Court finds that Dixon has met his burden for a TRO or preliminary injunction, this Court should not stay Dixon's execution altogether, but should only determine whether ADCRR can use the pentobarbital prepared on February 26, 2022, and permit ADCRR to proceed using Dixon's own identified alternative of pentobarbital that is within its beyond use date.

**IV.   *Conclusion.***

Based on the foregoing, Defendants' respectfully request that this Court deny Dixon's request for a preliminary injunction or temporary restraining order against Defendants carrying out his scheduled execution.

Respectfully submitted this 8th day of May, 2022.

Mark Brnovich
Attorney General

s/ Jeffrey Sparks____
Chief Counsel

Ginger Jarvis
Jason Easterday
Assistant Attorneys General
Attorneys for Defendants

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on May 8, 2022, I electronically transmitted the attached
document to the Clerk's Office using the ECF System for filing and served the
attached document using ECF on the following registered participants of the ECF
System:

3

4

5

Jennifer M. Moreno
Therese M. Day

6

Amanda C. Bass

7

Jennifer_moreno@fd.org
Therese_day@fd.org

8

Amanda_bass@fd.org

9

*Attorneys for Plaintiff*

10

Liz Gallagher

11

12

13

14

SKRAUSOG0DYCQ2

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16